THOMAS N. PORTER, &c., RESPONDENTS, *v.* WILLIAM
SPENCE, EXECUTOR OF WILLIAM SPENCE, DECEASED, AP-
PELLANT.

*Contract—Parol Evidence—Ironmongery—Case on Appeal—Findings of Fact.*

Construction of a contract—meaning of "Ironmongery,"—admissibility
of parol evidence of the time and circumstances of the drawing of a contract,
and additions or supplementary clauses thereto, to throw light on the mean-
ing and intention of the parties.

APPEAL from a judgment of the Supreme Court in the Second
District, affirming a judgment in favor of the Respondents in the
City Court of Brooklyn, on the report of a referee.

The action was to recover for work and labor performed and
materials furnished by the Respondents, as carpenters, upon a house
of the Defendant, in Brooklyn, &c., claiming to recover $454.46.
The answer denied any claim beyond the sum of $30, and also
alleged that the work was performed at the request of one Bon-
nell, who was the contractor with Defendant for the construction
of the house, and alleged payment to him.

The referee finds, among other things, that the Defendant re-
quested the Plaintiffs (who were builders employed on the job by
Bonnell) to make various alterations and additions to the work
and materials employed in the construction of the house, and that
they were done upon that request, and are of the value of $358.59,
for which the Defendant, upon that employment and request,
was liable, and for this sum he ordered judgment, with costs,
which was duly entered, and the appeal therefrom taken as afore-
said.

*D. P. Barnard* for Appellant.
*John H. Reynolds* for Respondents.

BACON, J.—As the case is made up it is doubtful whether any
question is presented to this Court arising out of the report of the
referee.

The case contains no finding of facts and conclusions of law separate from the report, as the well-settled rule of this Court requires ; nor is the report made any part of the judgment-record which comes up for review. The report itself contains but one or two findings of fact, &c. ; the remainder consists of an argument or opinion, giving a construction to the terms of the contract of the Defendant with Bonnell, and vindicating the interpretation the referee put upon it.

There are exceptions to the findings of fact, but these we do not review, especially as there was no countervailing evidence on the part of the Defendant. If the facts are right, as we assume them to be, the conclusion is inevitable that the Plaintiffs were entitled to recover. Services were rendered by the Plaintiffs, and materials furnished by them, at the request of the Defendant, and applied and used for his benefit, and the law implies a promise, to which the referee has given effect by finding in favor of the Plaintiffs for a sum considerably less than the amount claimed by them. There is, in truth, but a single exception which is presented in such shape as to allow a review in this Court. Included in the report in favor of the Plaintiffs is the sum of $154.16, which is the amount of a bill for shelf hardware or ironmongery, furnished by the Plaintiffs, and used upon the building. The ground of exception to the finding in respect to this item is stated to be, that by the terms of the contract with Bonnell, the whole ironmongery for the house was to be furnished by Bonnell, and was included in the gross sum that he was to be paid for the entire work.

The same exception was taken in the course of the trial, and arises upon the terms and construction of the contract between the Defendant and Bonnell. The contract and specifications between these parties were put in evidence, and in the latter occurs this provision : " Ironmongery and all plumber work to be furnished by the owner [the Defendant], as also speaking-tubes, bells, gas and heating apparatus." This, standing alone, would seem to impose upon the Defendant the duty of furnishing and paying for the articles specified ; but at the end of the articles there is

appended a clause in the following words : " It is understood that all ironmongery, &c., excepted in foresaid specifications, are to be executed by said N. Bonnell [the builder], and as follows : 1st, for iron railings and anchors, $120 ; 2d, plumber work, $200 ; 3d, marble mantels and grates, $200 ; and included in the aforesaid sum of $5,200." The construction put upon this clause by the referee was, that the articles therein specified, and no others, were to be included in the compensation of $5,200 provided for the entire work ; that, consequently, the items which proved the charge ·of $154.16, allowed by him to the Plaintiffs, were not within the contract, and they were justly entitled to recover them. Although the clause is not very artificially expressed, I think the meaning is obvious, and that the referee gave it the true construction. Taking the whole together, it provides that the particular things specified and sum mentioned shall be included in the compensation to be paid to the builder. The contract had specified what the owner was to furnish, and these articles which were provided and paid for by the Plaintiffs were included within the general designation of ironmongery, &c., and could only be excepted by a provision equally explicit elsewhere. The clause at the end of the specification is not only susceptible of the construction put upon it by the referee, but to give it any other would be to violate its plain import. The offer made upon the trial to show a reason from which it might be assumed that the Defendant desired to furnish these articles himself, under his contract with Bonnell, was an attempt by inference to put another construction upon the writing, in plain violation of the rule that a written contract cannot be varied by parol, and was properly rejected by the referee.

The judgment should be affirmed.

WOODRUFF, J. (dissenting.)—Two questions only are presented by the counsel for the Appellant for our consideration on this appeal.

First. Whether certain parol evidence should have been received which, the Appellant insists, would have assisted in the construc-

tion of the written contract made by the Appellant for the erection of the house therein agreed to be built for him.

Second. Whether, according to the true construction of the contract (unexplained by such evidence), the Appellant was liable to pay the Plaintiffs for certain hardware used in such erection.

The latter question may conveniently be first considered.

By written contract, dated in 1853, the Appellant agreed with one N. Bonnell to perform all the work, both mason's and carpenter's, and furnish all the materials for the erection of a brick dwelling-house, according to the plans and specifications mentioned, and all to be done for the sum and consideration of $5,200 —the whole to be completed on or before the 15th day of December, 1853.

To this is added—"It is understood that all ironmongery, &c., excepted in foresaid specifications, are to be executed by said N. Bonnell, and as follows: 1st, For iron railings and anchors, $120; 2d, plumber work, $200; 3d, marble mantels and grates, $200; and included in the aforesaid sum of $5,200." So far as the specifications throw light on this concluding clause of the contract, they show the following:

There were two specifications—one of what is called specification of carpenter's work and materials, giving size of house, height of stories, description of the timber and furring, the floors, roof, windows, and doors and hanging, and their trimming, describing with particularity the butts, locks, knobs, and various other details of hardware, the stairs, base-board, and various other details, and provide, in express terms, that "the fire places in second and third stories to have mantels of neat marble pattern, secured with iron hold-fasts; neat borders around all hearths;" and again, "tank, bath, sinks, trays, to be placed where shown on plans," giving some details as to each. And then provides—"*Ironmongery and all plumber work* to be furnished by the owner, as also speaking-tubes, bells, gas and heating apparatus. The contractor will be required to do all the carpenter work connected therewith; also fitting and putting on all locks, butts, weights, &c., on both doors and win-

dows." The other specification is called the "mason's specification."

That also gives the size of the house, height of stories, describes the cellar-walls, the brick-work, coping, floors; brown stone ashler steps, platform, sills, caps, and lintels; blue stone flagging in yard and area; paving, cistern, lathing and plastering; and has a distinct specification of the "iron work" in the mason's specification: "Iron anchors to be spiked to the timbers in each tier of beams, . . . good iron anchors to every course of ashler in front, and anchor on iron work for front stoop, . . . grating over areas to cellar, both front and rear; cover to coal-slide, and chain, hook, and padlock; iron rings and tin covers to such flues as may be required." It then adds:

"The owner will furnish marble mantels, marble hearths, range, and grates, and heating apparatus; also, all front railing of iron stoop and balconies; the mason to furnish all the rough materials that will be required for setting the same, and will finish after the plumber, trimmer, and gas-fitter, bell-hanger, and remove all rubbish from off the premises, and leave the building clean."

It thus appears (when the case is considered with reference to the face of the papers, unaided by any explanatory testimony) that there was an undertaking by Bonnell, in the body of the agreement, to do all the work and furnish all the materials according to the specifications, but that in those specifications were certain exceptions of materials and labor which the owner agreed to furnish, viz.:

"Ironmongery, all plumber work, speaking tubes, bells, gas and heating apparatus, marble mantels, marble hearths, range and grates, heating apparatus, front railing of stoop and balconies."

All these are, in the terms of the specifications, excepted from the undertaking of Bonnell, and had the agreement been signed without the concluding sentence, the Defendant would have been clearly liable for all of them.

What, then, does the concluding sentence of the agreement import?

"It is understood that *all ironmongery,* &c., excepted in fore-

said specifications are to be executed by said N. Bonnell, and as follows : 1st, for iron railings and anchors, $120; 2d, plumber work, $200 ; 3d, marble mantels and grates, $200 ; and included in the aforesaid sum of $5,200."

It is not perfectly easy to say what provisions so apparently inconsistent do import without the aid of other evidence.

Upon the face of the agreement, it is provided that Bonnell should perform all the work, according to certain specifications, and that he shall execute all the ironmongery, &c., excepted therein. Those specifications describe the work and materials with particularity, and declare that certain of the materials the owner shall provide. It is the duty of the Court to give effect to all those provisions, if we can; and it is equally clear that the Court may take into view the situation of the parties, the subject-matter of the contract in its details, the builder's meaning of the term " ironmongery," if it have a special or restricted meaning among builders, and every extrinsic fact before the minds of the parties when the agreement was signed, if the agreement is, on its face, of doubtful interpretation, and such extrinsic facts will make its import apparent. On the other hand, it is certain that in respect to what is stipulated, the oral negotiations and the oral declarations, and the verbal agreements, cannot be proved so as to alter or vary the legal effect of what is written.

On the one hand it is claimed that this concluding sentence of the agreement is only a partial modification of the clauses of the specification which excepts portions of the materials from the undertaking of Bonnell; that it means simply, that although iron railings, plumber work and marble mantels are in the specifications mentioned to be furnished by the owner, they shall be furnished by Bonnell, and be included in the price of $5,200 mentioned.

This is unsatisfactory, for several reasons. If this was the only meaning of the clause, what is the meaning of the several prices, $120, $200, and $200, annexed to each. Obviously, they were put there for some purpose, and I perceive no purpose they could serve except to define the character of these items by subjecting

them to the test of *cost*—i.e., the iron railings and anchors which the contractor shall furnish shall be such as shall, at their proper cost, not exceed $120, and so on ; but that cost shall nevertheless be covered by the aggregate price which the owner is to pay, viz., $5,200. Again, it rejects entirely the expression "that all *iron-mongery*" excepted in the aforesaid specifications are to be executed by said N. Bonnell; for we are not to disregard the fact that this term, "ironmongery," is the very word which is used in one of the specifications to describe the exception, and it is *not* used to describe iron railings or anchors, plumber work, marble mantels or grates.

The "ironmongery" excepted is an exception in the "carpenter's specification." The iron railings, anchors, and grates, are especially described by name as to be furnished by the owner. They are treated as something entirely distinct from and additional to the "ironmongery" excepted already in the carpenter's specification. To treat the particulars, 1st, 2d, and 3d thus mentioned, as particulars under the head of ironmongery, &c., is to assign to it a meaning which is not given to it by the parties in these specifications, and for that purpose to make the word "ironmongery," in the only place in which it is used, viz., in the carpenter's specification, embrace what it did not embrace when it was inserted therein.

On the other hand, it is claimed by the Appellant that the expression, "It is understood that all ironmongery, &c., excepted in the foresaid specifications are to be executed by N. Bonnell," means that everything excepted in the specifications shall be furnished by Bonnell, and that this concluding sentence expresses the after-thought and final agreement of the parties. That it was intended to override, and does override the exceptions first made. That "ironmongery" here means just what ironmongery meant in the only instance in which it was used in the specification; viz., in the carpenter's specification, when it meant butts, hinges, bolts, locks, knobs, and other articles for which the Plaintiff in this action claimed to recover, and that the "&c." added thereto was added because some of the excepted

materials were not ironmongery, but plumber's work, speaking tubes, marble mantels, marble hearths, &c., &c. That the specifications under the heads 1st, 2d, 3d, were not particulars under the head of ironmongery, and were not so classified in the specifications, and were not used to restrict the operation of this concluding sentence at all, save only in precisely the sense and meaning already above suggested.

The ironmongery, and most of the excepted materials, had been specifically described, and the contractor would see, without further description, what the contract required; but as to iron railings, there was nothing to define their weight or pattern, upon which their cost to the contractor would depend. That some would cost $3 per foot, others $10 and upwards. Cost was therefore agreed to as a test of their description, and has no other intelligible purpose, since whatever they cost, they were included in the aggregate price of $5,200. These observations are entirely apt to the other of the three mentioned items, and most of all to marble mantels, of which the cost varies from $25 to $1,000, and even a much larger sum.

I am disposed to concur in this view of the construction of the agreement. But it seems to me that certain extrinsic facts would, if proved, have made this construction quite clear.

Suppose it could have been proved that the specifications were first prepared. That next, and by another hand, the written agreement had been prepared, without this final clause, so as to bind the contractor to perform the work according to the specifications (and of course leaving all the excepted materials to be furnished by the owner). That upon examination of the papers, and in view of these exceptions, this added clause was inserted, and the price then also inserted. This would render perfectly harmonious the entire transaction. It would indicate either that the parties, or at least the architect that drew the specifications, contemplated the furnishing of the ironmongery, &c., by the owner, and that for some reason it was not so finally agreed, and that instead of revising the specifications, and erasing the various provisions to that effect, this short but summary mode of overriding the ex-

ceptions was resorted to, and made definite in regard to payment, by declaring that *all* ironmongery, &c., was included in the price of $5,200 to be paid for the building.

The offer of evidence by the Defendant embraced, in substance, this history of the contract, though not in the precise form I have supposed for illustration. I think it also embraced some particulars trenching on the rule that evidence to the oral negotiations is not admissible. It was competent to show the manner in which the papers were prepared, and the fact that this concluding sentence was an after-thought or alteration, and it was competent to prove any extrinsic fact known to the parties, by the aid of which this added clause might be applied for the purpose of construction to the papers as first drawn.

It is not claimed that if Bonnell was bound to furnish the hardware which is included in the Plaintiffs' bill of particulars, the Plaintiffs, who were employed by Bonnell, can recover from the Defendant therefor. The other exceptions relate to questions of fact, but for the reason stated I think the judgment should be reversed, and a new trial ordered, costs to abide the event.

Affirmed. MASON, J., not voting.

JOEL TIFFANY,
State Reporter.